**Anna L. FISHBURN, Plaintiff,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 88 Civ. 4096 (VLB).**

United States District Court, S.D. New York.

Sept. 29, 1992.

Davison F. Moore, Poughkeepsie, N.Y., for plaintiff.

Susan D. Baird, Sp. Asst. U.S. Atty., New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

On April 14, 1992, United States Magistrate Judge Sharon E. Grubin filed a Report and Recommendation that this Social Security disability case be remanded to the Secretary of Health and Human Services to obtain further evidence and apply appropriate legal standards. The Secretary does not object to this recommendation but urges that the remand be under sentence 4 of 42 U.S.C. § 405(g), which refers to judicial decisions "affirming, modifying or reversing" the decision of the Secretary, rather than under sentence 6, which is relevant where the remand is for consideration of new and material evidence. The latter is

1. "R" followed by numerals refers to page numbers of the certified administrative record filed

a more apt description of the substance of the Magistrate Judge's recommendation.

Under these circumstances, I adopt the Magistrate Judge's Report and Recommendation, remand the case to the Secretary with instructions to implement the steps outlined in that Report and Recommendation pursuant to sentence 6 of 42 U.S.C. § 405(g), and retain jurisdiction for purposes of dealing with any post-remand events appropriately brought before this court. For administrative purposes, this case is closed.

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE VINCENT L. BRODERICK

SHARON E. GRUBIN, United States Magistrate Judge:

This is an action brought under Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health and Human Services ("the Secretary") denying plaintiff's application for disability insurance benefits. Defendant has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons stated below, I recommend that defendant's motion be denied and that the case be remanded to obtain additional evidence and to apply appropriate legal standards to the evidence.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on January 8, 1987, alleging disability as of April 21, 1981 due to a "right hand injury" and a "bad back, spine." (R 35–38).[1] Her application was denied initially on April 29, 1987, and upon reconsideration on July 21, 1987. (R 43–45, 53–54). At plaintiff's request, a hearing was held November 12, 1987 before Administrative Law Judge J. Lawson Brown ("the ALJ"), who issued a decision on December

herein by the Secretary.

17, 1987. The ALJ denied plaintiff benefits, finding that she "was not disabled prior to December 31, 1986, when the special insured status requirements were last met and she has not been disabled at any time through the date of this decision." (R 11). Thereafter, the Appeals Council denied plaintiff's request for review of the ALJ's decision (R 2–3), and plaintiff timely commenced this action. Her complaint alleges that she "suffers from thoracic muscle strain with attendant pain in the spine and upper extremities." Complaint ¶ 9. Defendant filed the pending motion for judgment on the pleadings on March 29, 1989. Although given an opportunity to do so, plaintiff, who is represented by counsel, has not responded to the motion. The case, which was originally referred to Magistrate Judge Tyler for a report and recommendation, was reassigned to me following Judge Tyler's retirement.

## FACTUAL BACKGROUND

### Plaintiff's Testimony

At her administrative hearing, plaintiff appeared in person and was represented by her attorney, Davison F. Moore. Most of her testimony at the hearing was in response to questions from her attorney. Plaintiff testified that she was born on April 4, 1926 and lives with her husband and grandson in Poughkeepsie, New York. (R 21). She has a high school equivalency diploma. (R 32–33). Prior to 1961 she worked as a dietetic aide at a Veterans' Administration hospital in Albany, as a housecleaner, and as a nurse's aide at Vassar Brothers Hospital in Poughkeepsie. (R 22–23, 110). From 1961 to 1981 she was employed at the Hudson River State Hospital in Poughkeepsie as a mental hygiene therapy aide, for three of those years as a ward supervisor. (R 22, 67). There was no evidence at the hearing of the duties and requirements of that position, and neither the ALJ nor her attorney asked plaintiff any questions about them.[2] According to

plaintiff's handwritten "Disability Report" dated January 8, 1987 (apparently submitted with her application), her duties as mental hygiene therapy aide included giving out medication; preparing patient charts; and assisting patients in bathing, feeding, dressing and such chores as making beds and cleaning rooms. Plaintiff estimated that the job entailed walking and standing up to five hours a day, occasional bending and reaching, and frequent lifting of weights up to 25 pounds (occasionally as much as 50 pounds), apparently in conjunction with assisting patients in and out of baths and beds and, if necessary, restraining them. (R 67–68).

Neither plaintiff's attorney nor the ALJ asked plaintiff how her disorders came about. According to the report of a consultative physician who examined plaintiff in April 1987, plaintiff explained to him the background to her problems as follows. While she was at work on September 24, 1980, a patient took both her hands and swung her around, thereby twisting her neck and back and causing her severe pain. While she was at work on December 20, 1980, plaintiff was assaulted by another patient, who twisted her right wrist. Her right wrist and hand became "quite painful," and her right hand grip became weak. (R 99).

Plaintiff testified that in April 1981 she ceased her employment at the hospital because she was unable to do the work. Specifically, she "couldn't do any lifting" and her apparent vulnerability from wearing a wrist band provoked attacks from patients. (R 24, 63). Around that time, plaintiff began to receive Workers' Compensation payments, and she was still receiving them in 1987 when she applied for Social Security disability insurance benefits. (R 24, 57–58).

Plaintiff testified that, at some point in 1982 or 1983, she began to visit a local orthopaedic surgeon, Dr. Edward R. DeRamon (apparently for pain in the posterior neck and upper back), and, at the time of

---

2. Plaintiff was asked about her previous duties as a dietetic aide, the position she held prior to 1961, and she testified: "Well, you started patients and put them on diets. You have to wash the dishes and put them in a machine, carry trays, heavy dishes, stack them, put them away, mop the floors, like a general housecleaning, when you get finished doing the work." (R 3).

the hearing was seeing him once or twice a month or "sometimes maybe a week." (R 27).[3]

Plaintiff testified that Dr. DeRamon had prescribed Dolobid, Feldene and Carisoprodol and had given her injections in her right shoulder. (R 27; *see* R 93–95, 99). For about a year in 1984 or 1985, plaintiff received physical therapy treatments, but she discontinued them when she stopped being reimbursed. (R 32).

Plaintiff's statements about the restrictions her disabilities imposed on her activities were expressed in the present tense without explicit reference to the period 1981 through 1986. Plaintiff testified that she had back pain, had trouble bending and was able to do only "light" chores around the house; that she had pain in her wrist every day, whether using it or not; that driving longer than 20 miles caused "tingling" in her hand; that when she lifted an object, such as a dish, it could suddenly drop from her hand without warning; and that, although her medication relieved her pain, it made her sleepy. (R 28–31). Plaintiff also referred to pain in her knee if she walked too much. (R 30, 80).

*Treating Physicians' Reports*

Prior to reviewing the documentary evidence, it is important to note that, with the exception of a report of plaintiff's general physician, the reports and other documents in the record from treating physicians pertain only to plaintiff's condition and treatment in 1987. However, plaintiff is insured for purposes of entitlement to disability insurance benefits through December 31, 1986. (*See* R 9, 11, 27, 59–62). Under the Title II disability program, a claimant must show that she was disabled at the time she met the insured status requirements of the Act. At the hearing, the ALJ pointed out to plaintiff's attorney the "paucity" of evidence in the record

pertaining to plaintiff's condition prior to December 31, 1986. (R 26). In particular, although plaintiff testified that she was treated on a regular basis since 1982 or 1983 by her orthopaedic surgeon, Dr. De-Ramon, the record contained only reports regarding his 1987 examinations of plaintiff. (*See* R 93–95). Plaintiff's attorney stated that he was "familiar" with Dr. DeRamon's office and was "morally certain that within a day I can obtain serial notes for each of those visits [during the 1983–1986 period]." (R 27–28). The ALJ gave plaintiff's attorney 10 days to provide him with those records (R 27), but no further medical evidence was ever submitted and the ALJ rendered his decision in its absence. (R 10).

The reports from Dr. DeRamon in the record are for five visits by plaintiff during the short and essentially irrelevant period from March 13, 1987 through May 29, 1987.[4] In his report dated March 13, 1987, Dr. DeRamon noted that plaintiff complained of "pain in her neck"; flexion and hyperextension each produced pain in the neck "down to the spinous process of C7"; head turning and head tilting to the left each produced pain in the right trapezius; head turning to the right was "free and painless"; and head tilting to the right produced "some pain in the right trapezius, much less so." Hyperextension and flexion in the last few degrees of motion produced pain in the right knee, and there was also pain on "MacMurray maneuver with the foot in external rotation and more with the foot in internal rotation" and on "palpation of the medial joint space." Dr. DeRamon also noted that plaintiff "states she has pain in the low back occasionally, but she has none today." His diagnosis was "Cervical derangement; internal derangement of the right knee, torn medial meniscus?" (R 95). In his report dated April 24, 1987,

---

**3.** In her January 8, 1987 "Disability Report," plaintiff wrote that she "no longer" saw Dr. DeRamon and that she had last seen him in July 1986. Plaintiff also wrote that she first saw Dr. DeRamon in 1981. (R 64). It appears that plaintiff did not see Dr. DeRamon again until his "Disability Examination" of plaintiff on March 13, 1987. (R 95).

**4.** Each report contains the notation "cc: WCB; State Ins. Fund; Ouimette, Goldstein & Andrews, P.C." As the "request" for "authorization ... per the Board rules" in the April 24, 1987 report also suggests, Dr. DeRamon's reports appear to have been prepared for the New York Workers' Compensation Board.

Dr. DeRamon noted that plaintiff "at this time has pain in the neck and radiation down the right upper extremity" and made notations similar to those on March 13, 1987 regarding pain caused by head turning and tilting. He also noted that "[t]he elbow which I said was back to normal November 5th of 1985 is hurting once again." He noted that plaintiff had taken Carisoprodol and Dolobid for pain and Feldene, and he prescribed these medications again. He also requested authorization for 30 treatments of physical therapy for the cervical area.

Dr. DeRamon's cursory reports on three follow-up visits indicate a favorable response to treatment. On May 1, 1987: plaintiff "is taking her medication and states that the pain is much less than it was." On May 15, 1987: "This patient is improving." On May 29, 1987: "This patient is doing well." (R 93).

The record also contains a report dated February 22, 1987 for the New York State Office of Disability Determinations from Dr. Eugene L. Koloski (R 87–92), whom plaintiff listed as her general physician. (R 64). Dr. Koloski stated that he first treated plaintiff in 1960, that her last visit was on September 12, 1986, and that he treated her on a very "infrequent" basis during the intervening period.[5] Under "history and subsequent course," Dr. Koloski wrote "minor illness 1960–1986" and listed rhinitis, orthostatic edema of the legs, dizziness, and arthritis of the knees. He stated that plaintiff's "complete physical exam" on September 12, 1986 "revealed no apparent musculo-skeletal abnormalities"; that "the

general physical exam was normal"; and that plaintiff was taking Dolobid for pain in her knees. Asked on the form to indicate "limitations of motion in involved joints," Dr. Koloski wrote "none seen." (R 91). He also noted "I have not been aware of significant musculo-skeletal disorder." (R 92).

*Consultative Physician's Report*

At the request of the New York State Department of Social Services Office of Disability Determinations, plaintiff was referred to Dr. Emilio Ejercito of Dutchess Physiatric Associates, a specialist in physical medicine and rehabilitation (R 102). In a report dictated on April 13, 1987 apparently based on an examination of plaintiff on April 8, 1987,[6] Dr. Ejercito noted tenderness and muscle spasm in the neck and upper back, full ranges of motion in the cervical spine, extremities and lower back, with "slightly tight" muscles and localized tenderness in the latter. Tinel's sign was positive on percussion of the right wrist, suggesting the possibility of carpal tunnel syndrome.[7] Dr. Ejercito also noted that X-rays of plaintiff's right hand "revealed degenerative changes in the fingers on this side" but "failed to show any significant abnormality" in the right wrist, and that X-rays of the lumbosacral spine also "did not reveal any significant abnormality." His concluding "Impression" was:

1. chronic recurrent cervical thoracic muscle strain

2. low back pain syndrome with possible sciatic, left

3. bilateral Pes Planus

---

5. Although Dr. Koloski's handwriting is difficult to decipher, he appears to have written that his treatment of plaintiff was "infrequent about 4 year intervals." (R 91).

6. Since X-rays of plaintiff ordered by Dr. Ejercito were taken on April 8, 1987 at St. Francis Hospital in Poughkeepsie and Dr. Ejercito's office is at that hospital, it is likely that the examination also took place on that date.

7. Dr. Ejercito reported the following:
Examination of the posterior neck and upper back revealed tenderness along the midline in the cervical spine, although the ranges of motion were full. Palpation of the right cervical and trapezius muscle revealed tenderness and

moderate spasm. In both upper extremities the joint ranges of motion were free and muscle strength was good. Tinel's sign was positive on percussion over the volar aspect of the right wrist. Examination of the patient's low back revealed full lumbosacral mobility. The lumbar paravertebral muscles were slightly tight on both sides and there was localized tenderness present in the left sacroiliac and sciatic notch areas. In the supine position, straight leg raising was negative bilaterally. The hip and knee joint ranges of motion were full....
(R 99).

4. ? carpal tunnel syndrome, right. (R 100).

*The ALJ's Findings*

The ALJ concluded that plaintiff did not have "an impairment that would prevent performance of past relevant work." He acknowledged that she had a history of complaints of pain in her right wrist and hand and low back, that her return visit to Dr. DeRamon in March 1987 after she filed her application indicated "some pain on ranges of motion of the neck and knee"; and that her examination by the consultative physiatrist in April 1987 showed a positive Tinel's sign, possibly suggestive of carpal tunnel syndrome, and mild degenerative changes in the fingers of her right hand. (R 10–11). Nonetheless, the ALJ noted that her physical examination by her internist in September 1986 "was within normal limits, including no abnormal musculoskeletal findings"; that Dr. DeRamon's reports indicated that her ranges of motion were full and that she had responded well to medication in the two months following her return visit; and that, apart from the positive Tinel's sign, the consultative physiatrist's examination "failed to show any significant abnormalities of the musculoskeletal system." (R 11). The ALJ found that plaintiff's testimony about pain and limited activity was overstated and unsupported by the clinical record. He further found that she had the residual functional capacity to perform work-related activities except for "heavy" lifting (20 CFR 404.1545) and that her past work as a mental hygiene therapy aide "did not require the performance of work-related activities precluded by the above limitation(s)." Therefore, he found "[t]he claimant's impairments do not prevent the claimant from performing her past relevant work." (R 11–12).

## DISCUSSION

### I.

■ For SSI purposes, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[8] That impairment must be of such severity that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B). The evidence which must be considered in determining whether an individual is disabled includes: (1) objective medical facts; (2) diagnoses and medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the individual or others; and (4) the individual's educational background, age and work history. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir.1983) (per curiam); *Carroll v. Secretary*, 705 F.2d 638, 642 (2d Cir.1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980).

■ In reviewing a denial of disability benefits, the court is not empowered to make a *de novo* determination of whether the plaintiff is disabled. *Wagner v. Secretary of Health and Human Services*, 906 F.2d 856, 860 (2d Cir.1990). *See Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *Parker v. Harris*, 626 F.2d at 231. Rather, it is the function of the Secretary, and not the reviewing court, to pass on the credibility of witnesses, including the claimant, and to resolve material conflicts in the testimony. *Richardson v. Pe-*

8. Since the standards for eligibility for supplemental security income benefits and judicial review thereof are virtually identical to the standards in disability insurance cases, decisions rendered under 42 U.S.C. § 423 are also applicable to cases under 42 U.S.C. § 1382c(a)(3). *Hankerson v. Harris*, 636 F.2d 893, 895 n. 2 (2d Cir.1980); *Rivera v. Harris*, 623 F.2d 212, 216 n. 4 (2d Cir.1980).

*rales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Aponte v. Secretary,* 728 F.2d 588, 591 (2d Cir.1984); *Carroll v. Secretary,* 705 F.2d at 642; *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1980). The court's function is limited to assessing whether the Secretary applied the proper legal standards in making his determination and whether that determination is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3); *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Donato v. Secretary,* 721 F.2d 414, 418 (2d Cir.1983). *See also Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989).

■ In that regard, the Supreme Court has defined "substantial evidence" as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See also Johnson v. Bowen,* 817 F.2d at 986. The Secretary's finding will be sustained if supported by substantial evidence, 42 U.S.C. § 405(g), *see, e.g., Arnone v. Bowen,* 882 F.2d at 37, even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the Secretary's. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Anderson v. Sullivan,* 725 F.Supp. 704, 706 (S.D.N.Y.1989); *Spena v. Heckler,* 587 F.Supp. 1279, 1282 (S.D.N.Y.1984). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988). *See Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Mongeur v. Heckler,* 722 F.2d at 1038.

■ The reviewing court must assure that the Secretary follows the "treating physician rule," under which the opinion of the claimant's treating physician on the subject of medical disability is entitled to extra weight because a treating physician is usually more familiar with a claimant's medical condition than other physicians, and a treating physician's opinion as to disability is binding unless controverted by substantial evidence. *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986); *see also Wagner v. Secretary,* 906 F.2d at 861; *Vargas v. Sullivan,* 898 F.2d 293, 294 (2d Cir.1990); *Hidalgo v. Bowen,* 822 F.2d 294, 296–97 (2d Cir.1987); *Johnson v. Bowen,* 817 F.2d at 985–86; *Havas v. Bowen,* 804 F.2d 783, 785–86 (2d Cir.1986); *Stieberger v. Bowen,* 801 F.2d 29, 37 (2d Cir.1986). Ultimately, the "[r]esolution of genuine conflicts between the opinion of the treating source, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder." *Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988). *See Cruz v. Sullivan,* 912 F.2d at 12.

■ The Secretary's regulations set forth a five-step sequence to be used in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290, 96 L.Ed.2d 119 (1987); *Bowen v. City of New York,* 476 U.S. 467, 470, 106 S.Ct. 2022, 2024, 90 L.Ed.2d 462 (1986). *See also Sullivan v. Zebley,* 493 U.S. 521, 523–27, 110 S.Ct. 885, 888–89, 107 L.Ed.2d 967 (1990). As explained in the Court of Appeals in *Berry v. Schweiker,* 675 F.2d 464 (2d Cir. 1982) (per curiam), the five steps are as follows:

> First, the Secretary considers whether claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Ap-

pendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. *Id.* at 467. The claimant bears the burden of proof as to the first four of these steps. If he or she meets the burden of proving that he or she cannot return to his or her past work, the Secretary assumes the burden of proving the last step—that there is other work that the claimant can perform. *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984); *Dousewicz v. Harris,* 646 F.2d 771, 772 (2d Cir.1981); *Parker v. Harris,* 626 F.2d at 231.

The ALJ's decision herein suffers from several major flaws and is not supported by substantial evidence in the record.

## II.

■ There is virtually no medical evidence in this record from the relevant period, although it is clear medical records exist. The only such report in the record is of Dr. Koloski, plaintiff's general physician who saw her in September 1986, apparently for the first time in about four years. The ALJ's decision is based on that report, on the 1987 report of the Secretary's consultant, Dr. Ejercito, who saw plaintiff once, and on the irrelevant and cursory 1987 reports of plaintiff's orthopaedist Dr. DeRamon. The ALJ, himself, noted the "paucity" of medical documentation at the hearing, where he was informed that plaintiff had seen Dr. DeRamon at least once every

two weeks for at least four years. Although the ALJ gave plaintiff's attorney ten days to submit the evidence after the attorney stated, "I am morally certain that within a day I can obtain serial notes for each of those visits" (R 27), he had a duty to pursue the evidence himself when plaintiff's attorney failed to follow through rather than to simply render an opinion in its absence.

Because Dr. DeRamon was plaintiff's treating physician, his records and opinions are critical to a proper determination of plaintiff's claim. Although plaintiff's attorney failed to perform his duties to her, the ALJ is not excused from performing his own duties.

In *Schisler v. Bowen* ("*Schisler* II"), the Second Circuit approved a Social Security Ruling (SSR) instructing administrative law judges of the importance of and standards for obtaining treating source evidence:[9]

> ... *treating source evidence should always be requested and every reasonable effort should be made to obtain it.* Treating sources should be requested to provide complete medical reports consisting of a medical history, clinical findings, laboratory findings, diagnosis, treatment prescribed and response to any treatment, prognosis, and a medical assessment; *i.e.,* a statement of the individual's ability to do work-related activities. *If the treating source provides an incomplete medical report, the adjudicator will request the necessary additional information from the treating source.*

851 F.2d at 46–47 (emphasis added). "[T]he ALJ has a duty to develop the facts fully and fairly, and must 'affirmatively assist the parties in developing the record.'" *Walker v. Heckler,* 588 F.Supp. 819, 824 (S.D.N.Y.1984) (quoting *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984)). *See also* 20 C.F.R. §§ 404.944, 416.1444 (mandating that the ALJ "look[ ] fully into the issues" to develop a full record). "The ALJ's duties are heightened when a claimant is *pro se,* but exist even when a claim-

9. Although *Schisler* II was decided after the ALJ's decision herein, the ruling simply formalized in an SSR the rules of law which the courts in this Circuit have for many years imposed upon the Secretary's decision-making.

ant is represented by counsel." *Walker v. Heckler*, 588 F.Supp. at 824; *see also Thorne v. Califano*, 607 F.2d 218, 219 n. 3 (8th Cir.1979) (ALJ's duty to develop facts fully and fairly applies "even when claimant has counsel"); *Masella v. Heckler*, 592 F.Supp. 621, 624 (W.D.N.Y.1984) ("The fact that a claimant is represented by counsel does not absolve the ALJ from his abiding responsibility to develop fully the facts of the claimant's case in a non-adversarial fashion consistent with the broadly remedial purposes of the Social Security Act.") Under ordinary circumstances, an ALJ may be entitled to presume that a claimant's counsel is making the claimant's "strongest case for benefits." *Jones v. Bowen*, No. 85 Civ. 9913 (RLC), 1986 WL 15332 at *2 n. 4 (S.D.N.Y. Dec. 31, 1986); *see also Jantz v. Heckler*, 616 F.Supp. 584, 588 (S.D.N.Y. 1985). However, it was clear in this case that Dr. DeRamon had treated plaintiff during the relevant period for conditions for which she claimed benefits and that records for examinations and treatments during this period had to exist, since they were created for the purpose of qualifying for and receiving Worker's Compensation benefits. (R 27). It was the ALJ's responsibility to "request the necessary additional information from the treating source," *Schisler v. Bowen*, 851 F.2d at 46–47, by contacting plaintiff's attorney to remind him to submit them, or to obtain them directly from Dr. DeRamon.[10]

## III.

■ Curiously, although his decision rested on his finding that plaintiff had the residual functional capacity to perform her past work as a mental hygiene therapy aide, the ALJ adduced no evidence whatsoever as to the duties or exertional requirements of that job. It is, thus, difficult to understand how he reached his finding.

There is evidence in the record concerning her past work, although the ALJ did not refer to it in his decision. In her January 8, 1987 "Disability Report," [11] plaintiff indicated that her duties as mental hygiene therapy aide included assisting patients in bathing, feeding and dressing, and, if necessary, restraining them. She estimated that the job entailed walking and standing up to five hours a day, occasional bending and reaching, and frequent lifting of weights up to 25 pounds (occasionally as much as 50 pounds), apparently in conjunction with assisting patients in and out of baths and beds. (R 67–68). Plaintiff's description is consistent with the definition in the *Dictionary of Occupational Titles* § 355.377–018 (4th Ed.1977; 1986 Supp.) of the medical services job of "mental-retardation aide" (an alternate listing for which is "resident care aide"). Its required duties include "[r]estrain[ing] disruptive residents to prevent injury to themselves and others," and its "physical demands" include "reaching" ("[e]xtending hand(s) and arm(s) in any direction") and "handling" ("[s]eizing, holding, grasping, turning, or otherwise working with hand or hands"). The position is classified as "medium work." [12] There is no evidence at all that the ALJ referred to the *Dictionary* or anything else to determine what duties were required by the position.

---

**10.** Plaintiff is represented here by the same attorney who represented her before the ALJ. As mentioned earlier, no response to the Secretary's motion for judgment on the pleadings has been submitted for plaintiff by said attorney. This failure to respond has occurred despite the fact that when the case was reassigned to me from Magistrate Judge Tyler, after seeing no response had ever been submitted, I wrote to the attorney and gave him additional time to respond. Even worse, when he still failed to respond, I called his office and left a message that I was calling to ask whether he intended to submit a response, but my call was never returned and no response was ever submitted.

**11.** *See also* plaintiff's Employee Performance Evaluation Program Appraisal and Rating Form for the period April 1, 1980 through October 1, 1980. (R 106).

**12.** "Medium Work" is defined in the Secretary's regulations as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" and requires "a good deal of walking or standing." 20 CFR § 404.1567(c) and (b). The definition in the *Dictionary of Occupational Titles*, Appendix D at 102, is "[e]xerting up to 50 pounds of force occasionally, and/or up to 20 pounds of force frequently, and/or up to 10 pounds of force constantly to move objects."

According to plaintiff's testimony, it would be impossible for her to perform such work. The ALJ, however, totally discredited plaintiff's testimony as to her pain and limitations. While it is within his authority to do so, given a proper record, his doing so was contrary to law, as will be discussed below. But, without regard to her testimony, simply the evidence of the Secretary's own consultant who examined plaintiff once is enough to indicate that plaintiff could well be precluded from performing this past work. The Secretary's own "objective" medical evidence establishes that she suffered from "chronic recurrent cervical thoracic muscle strain," and "low back pain syndrome with possible sciatic," positive Tinel's sign and possible carpal tunnel syndrome.[13] (R 100). The consultant also found "degenerative changes in the fingers" on her right hand. (*Id.*)

Thus, even looking solely at the evidence of the Secretary's consultant, I find that the ALJ's conclusion that plaintiff could perform her past work is not supported by substantial evidence. It would appear questionable, if not impossible, for a woman of plaintiff's age with chronic thoracic strain, lower back pain and constant numbness and/or pain in the nerve of her right wrist to lift objects of 50 pounds or frequently carry 25 pounds. (Plaintiff testified that even small objects, like a dish, suddenly just drop from her hands and that, when she bends, she is sometimes unable to straighten up. (R 31).) An inability to firmly grip, grasp, pull or hold with her right hand could well preclude the activities required by the job. Nor does it seem likely that she could assist patients in and out of baths and beds, much less restrain disruptive ones.[14]

## IV.

Finally, the ALJ's conclusion that plaintiff's pain "is not as severe or as incapacitating as she would have one believe and such pain should not interfere with performance of duties as a mental hygiene therapy aid" is also unsupported by this record.

An ALJ "must consider a claimant's subjective complaints of pain, although such complaints are not conclusive." *Morris v. Bowen*, No. 88 Civ. 0591 (KMW), 1989 WL 270108 at *5, 1989 U.S.Dist. Lexis 220 at *14 (S.D.N.Y. Jan. 12, 1989). As amended by the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A) provides, in pertinent part:

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph ... would lead to a conclusion that the individual is under a disability.

If a medically ascertained impairment is found which could reasonably be expected to produce the pain alleged, *i.e.*, one which does not in itself support a finding of disability apart from the pain, "the medically-established impairment *alone* would be sufficient to support a finding of disability, even if no further cause of ... pain were established by objective, clinical evidence." *Marcus v. Califano*, 615 F.2d 23, 28 (2d Cir.1979). Under such circumstances, an ALJ may disbelieve claims of severe, dis-

---

13. Tinel's sign is "a sensation of tingling, or of 'pins and needles,' felt in the distal extremity of a limb when percussion is made over the site of an injured nerve." *Stedman's Medical Dictionary* (25th ed. 1990) 1422. Carpal tunnel syndrome is "pain and paresthesia (tingling, burning, and numbness) in the hand in the area of distribution of the median nerve, caused by compression of the median nerve by fibers of the flexor retinaculum." *Id.* 1525.

14. The ALJ's conclusion that plaintiff could perform her past work, rendered without any inquiry whatsoever into the demands of that work, is even more inexplicable given the absence of any opinion or evaluation at all as to her residual functional capacity by her treating physician.

abling pain "after weighing the objective medical evidence in the record, [claimant's] demeanor, and other indicia of credibility," *id.* at 27, whereupon he must set forth his reasons "with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984). Moreover, as Social Security Ruling 88–13 sets forth:

> In evaluating a claimant's subjective complaints of pain, the adjudicator must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function.... In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's subjective complaints solely on the basis of such personal observations.

*Stieberger v. Sullivan,* 738 F.Supp. 716, 741 (S.D.N.Y.1990) (quoting SSR 88–13).

The ALJ gives no reason for rejecting plaintiff's claims of disabling pain, and this failure of explanation is all the more glaring in view of both the extent to which the record confirms or otherwise points to objective bases for plaintiff's complaints[15] and the ALJ's failure to obtain the most relevant medical evidence for this record.[16] Moreover, it is clear from the record, including references to documentation of Worker's Compensation benefits, that plaintiff left her former job due to injuries sustained while on duty at the mental hospital. Indeed, the record contains an Employee Performance Evaluation Program Appraisal and Rating Form for plaintiff for the period April 1, 1980 through October 1,

1980 that includes among its very favorable comments:

> She has been plagued with wrist injury & out for 6–8 weeks during Admission service & period being evaluated. She has to be reminded at times to pace her work so as not to hurt her wrist....
>
> .... When Admission Unit opened she served as 1st Charge until her wrist injury obliged her to be absent. Her leadership qualities & her enthusiasm for her [patients] & for her work were missed then.

(R 106–07). Plaintiff is a 66–year–old woman who has worked her entire adult life, including 20 years at her last job until she suffered her injuries. Yet another significant factor that the ALJ should have taken into account but apparently ignored is her exemplary work history. It is well established in the Second Circuit that "a claimant with a good work record is entitled to substantial credibility when claiming inability to work because of disability." *Stieberger v. Sullivan,* 738 F.Supp. at 742 (citing *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983)).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that your Honor remand this matter to the Secretary with instructions that he develop the record to include the medical records from plaintiff's treating physician for the period of plaintiff's claimed disability; that he obtain from her treating physician an evaluation as to her residual functional capacity and an opinion as to disability; that he make the necessary examination of the requirements of plain-

---

**15.** The findings of the Secretary's consultant *alone* contain such bases (*see* p. 1027, *supra*). It is worth noting, in this regard, that, under 42 U.S.C. § 423(d)(5)(A), "[o]bjective medical evidence of pain or other symptoms established by medically available clinical or laboratory techniques (for example, *deteriorating nerve or muscle tissue*) must be considered in reaching a conclusion as to whether the individual is under a disability." (Emphasis added.) Moreover, the reports in the record from Dr. Koloski and Dr. DeRamon indicate the presence of abnormalities in both the right wrist and lower back, accounting for pain and stiffness and causing restriction of regular activities.

**16.** The ALJ refers to plaintiff's "excellent response to medication" (R 11) prescribed by Dr. DeRamon. In fact, the evidence shows only that medication gave plaintiff some degree of relief from her pain. (R 93). Moreover, it does not follow that being medicated would enable her to perform her past work, since she testified that the medication made her drowsy to the point of being unable to function. (R 30). *See Figueroa v. Secretary of Health, Education and Welfare,* 585 F.2d 551, 553–54 (1st Cir.1978); *Makovics v. Schweiker,* 577 F.Supp. 1287, 1296 (D.Del.1983).

tiff's former job as mental hygiene aide; that in considering plaintiff's subjective complaints of disabling pain he apply the correct criteria based on the evidence and set forth with the requisite specificity his reasons for either accepting or rejecting her complaints; that he give appropriate weight to plaintiff's age and work record; and that he otherwise take steps necessary to render a decision in accordance with the principles set out in this Report and Recommendation.

Copies of this Report and Recommendation have been mailed this date to the following:

Davison F. Moore, Esq.
P.O. Box 5190
88 Market Street
Poughkeepsie, New York 12602

Susan D. Baird, Esq.
Special Assistant United States Attorney
100 Church Street, 19th Floor
New York, New York 10007

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Vincent L. Broderick, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Broderick. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam). *See generally* Fed.R.Civ.P. 6(a), 6(e).