Colleen PETERSON, Plaintiff,

v.

**Jo Anne BARNHART Commissioner
of Social Security Defendant.**

No. 01 CIV.1916(NRB).

United States District Court,
S.D. New York.

July 25, 2002.

Charles E. Binder, Binder and Binder, New York City, for plaintiff.

John E. Gura, Assist. U.S. Atty., New York City, for defendant.

### *MEMORANDUM AND ORDER*

BUCHWALD, District Judge.

Plaintiff Colleen Peterson ("plaintiff" or "Peterson"), brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to challenge a final decision of the Commissioner of Social Security ("the Commissioner"). Plaintiff seeks additional Social Security Disability Insurance ("SSDI") benefits for the period of February 1, 1993 to March

31, 1996 (the "disputed period"). Now pending are the parties' respective motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons stated below, defendant's motion is granted and plaintiff's motion is denied.

## BACKGROUND

Plaintiff, who is now 49 years old, claims she has been unable to engage in gainful employment since February 1, 1993. Tr. at 66, 103.[1] Prior to February of 1993, plaintiff worked as a school secretary, where her job duties included typing, answering phones, computer data entry, and placing purchase orders. Tr. at 72. From at least September of 1975, plaintiff had also worked as a senior secretary, an administrative assistant, and a senior clerk for various employers. Tr. at 75–83. Plaintiff filed for SSDI benefits on June 10, 1997, claiming disability due to "rheumatoid arthritis, bone [deterioration], sarcoidosis, hand and knee swelling, shoulder replacement, asthma, sinusitis, and blurry vision," but her application was denied on November 18, 1997. Tr. at 46–49, 66, 69. Plaintiff filed a Reconsideration Disability Report on January 24, 1998. Tr. at 50–51. Plaintiff's application was again denied on February 5, 1998. Tr. at 52–56. On April 8, 1998, plaintiff, represented by counsel, requested a hearing which was held on October 20, 1998 before an Administrative Law Judge ("ALJ"). Tr. at 21–43, 57–58.

On February 24, 1999, the ALJ issued his decision finding that plaintiff was not disabled within the meaning of § 216(i) and § 223 of the Act. Tr. at 17–19. The ALJ found that, although the plaintiff's claims "concerning her [current] impairments and their impact were generally credible," her "medically determinable impairments did not prevent her from being able to resume any of her past relevant work prior to March 30, 1996," the last date of her insured status. The ALJ reached this conclusion because the alleged severity of plaintiff's impairments was not supported by the record and she, therefore, was not disabled within the meaning of the Act. Tr. at 18. The ALJ gave little weight to the assessments of two of plaintiff's treating physicians, Dr. Janet Townsend ("Townsend") and Dr. Kevin Plancher ("Plancher"), on the grounds that the physicians failed to provide explanations for their assessments and offered retrospective diagnoses.[2] Tr. at 16. Furthermore, the ALJ determined that, in spite of her impairments, plaintiff retained the residual functional capacity to perform light work, "provided she was not exposed to respiratory irritants at the job and provided she was not required to walk a significant distance or to climb stairs at the job." Tr. at 18.

By letter dated February 22, 1999, plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. at 7–8. On January 17, 2001, the Appeals Council denied plaintiff's appeal, making the ALJ's decision the final decision of the Commissioner. Tr. at 5. The Appeals Council reached this conclusion on the grounds that there was no basis for granting plaintiff's request for review, nor did an evidentiary basis exist for changing the ALJ's decision. *Id.* Plaintiff commenced the present action on March 7, 2001, seek-

1. "Tr." refers to the administrative transcript filed with defendant's Answer in accordance with 42 U.S.C. § 405(g).

2. Both treating physicians concluded, without explanation, that plaintiff could not be expected to sit for more than two hours out of an eight hour day. Tr. at 16. The ALJ also weighed Townsend's assessment lightly because, although Townsend had occasionally been the doctor of record listed on plaintiff's hospital admission forms as early as 1993, Townsend reported that she had never examined the plaintiff before March of 1997, one year after the expiration of the plaintiff's insured status. Tr. at 16, 247, 358, 382, 466.

ing a ruling that she was, in fact, disabled during the disputed period and payment of SSDI for that period.

## *DISCUSSION*

█ Under the Act, a person is entitled to SSDI benefits when he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(3)(A); *see Melville v. Apfel*, 198 F.3d 45, 50 (2d Cir.1999). Such a physical or mental impairment must be supported by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(C). Determinations of the severity of the impairment are based on objective medical facts, diagnoses or medical opinions that may be inferred from these facts, subjective complaints of pain or disability, and educational background, age, and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir.1983); *Fishburn v. Sullivan*, 802 F.Supp. 1018, 1023 (S.D.N.Y.1992).

The scope of judicial review in these situations is limited: the Commissioner's decision is deemed conclusive; unless it is not supported by substantial evidence, or is based on an erroneous legal standard. 42 U.S.C. § 402(g); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); *Wagner v. Secretary of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). To facilitate our review of the ALJ's and the Commissioner's findings, it is helpful to first briefly summarize the standards that apply to plaintiff's claim.

### A. *The Five Step Analysis*

The Commissioner follows a five-step analysis in determining whether a plaintiff is eligible for disability benefits under 20 C.F.R. § 404.1520. First, the Commissioner considers whether the plaintiff is currently engaged in substantial gainful activity. If she is not, the Commissioner next considers whether the plaintiff has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the plaintiff has such an impairment, the third step requires the Commissioner to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations. If the impairment is listed, disability is presumed, and the plaintiff is considered unable to perform substantial gainful activity. Otherwise, the Commissioner proceeds to the fourth step and determines whether the plaintiff retains the residual functional capacity to perform her past work. If she is unable to perform her past work, the final step requires the Commissioner to determine whether there is other work within the national economy that the plaintiff is qualified to perform. 20 C.F.R. § 404.1520; *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000); *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir.1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam)). The burden of proof for each one of the first four steps lies with the plaintiff; the Commissioner bears the burden of proof on only the last step. *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467); *accord Melville*, 198 F.3d at 51.

### B. *The ALJ's Findings*

As to the first two steps, the ALJ determined that plaintiff had not engaged in a substantial, gainful activity since February 1, 1993, and that the impairments that she suffered from "had a combined impact which was severe." [3] Tr. at 14, 17–18. At

---

**3.** The ALJ found that plaintiff currently suffered from sarcoidosis, osteoporosis, rheuma-

step three, however, he found that plaintiff "did not have an impairment which met the criteria of any of the listed impairments" in, or medically "equivalent in severity to the criteria of any listed impairment in [20 C.F.R., Part 404, Subpart P, Appendix 1]." Tr. at 15, 18. The ALJ thus proceeded to step four of the analysis, to determine whether plaintiff retained functional capacity to do her past relevant work. Tr. at 18. At step four, the ALJ determined that plaintiff "was able to resume any of her past relevant work" during the disputed period because of her "residual functional capacity [that] allowed her to perform jobs at a light exertional level on a full time and competitive basis, provided she was not exposed to respiratory irritants...and...not required to walk a significant distance or to climb stairs at the job."[4] *Id.* Finally, although not essential, the ALJ proceeded to the fifth step of the analysis and concluded that the "[plaintiff's] allegation that her impairments prevented her from being able to work at any job existing in significant numbers in the national economy, at a full-time basis...is unsupported by the record." *Id.* Ultimately, the ALJ concluded that "even if [plaintiff] could not resume her past relevant work... [she] was not disabled during the relevant time period" pursuant to Rule 202.21 of the Medical–Vocational Rules, because the plaintiff had the residual capacity to perform light work during the disputed period. Tr. at 17–18.

Having made these determinations, the ALJ found that plaintiff was capable of performing her past work, and therefore was not disabled under the Act.

### C. Assessment of the ALJ's Findings

The plaintiff contests the fourth step of the ALJ's analysis. Specifically, plaintiff challenges the ALJ's conclusion that she could perform her previous work during the disputed period. Plaintiff has raised two arguments in opposition to the ALJ's findings and analysis.[5] First, plaintiff argues that the ALJ did not fulfill his duty to develop the medical record *sua sponte.* Second, plaintiff asserts that the ALJ accorded insufficient weight to plaintiff's treating physician. *See* Pl.'s Mem. at 18–23.

### 1. Duty to Develop the Record Sua Sponte

■ The plaintiff argues that the ALJ did not fulfill his duty to develop the medical record *sua sponte.* It is well settled that, even when the claimant is represented by counsel, the ALJ has an affirmative duty to develop the medical record and seek out further information where physician's reports are inconsistent and where gaps exist in the record. *See Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999) (sparse notes, incomplete record of medical visits, and brief, conclusory assessments constitute gap in the medical record re-

---

toid arthritis, necrosis of her right shoulder and asthma. Tr. at 14, 17.

**4.** Although two hospital discharge summaries, dated March, 18, 1993, and April 7, 1993, note that plaintiff should perform her activities only "as tolerated," the two reports expressly indicate that the physicians did not place any limitations on the activities that plaintiff could perform. Tr. at 134–135, 248–249, and 520. Such notations are not found in any other medical reports from the disputed period.

**5.** In addition to these two main arguments, plaintiff argues that because the ALJ stated that he found her testimony generally credible, his conclusion that plaintiff was not disabled during the disputed period cannot be supported. However, while the ALJ did state that he found plaintiff's statements "concerning her impairments and their impact generally credible," plaintiff has not seized upon an actual inconsistency in his conclusion because the ALJ was assessing Peterson's credibility with respect to her impairments *after* the disputed period. *See* Pl.'s Mem. at 23–26.

quiring ALJ development *sua sponte* ). However, where the ALJ possesses "a complete medical history," the ALJ is under no duty to seek additional information before rejecting a claim. *Rosa*, 168 F.3d at 79, n. 5 (*citing Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996)).

■ In this case, the medical records reviewed by the ALJ were sufficiently complete to support the ·ALJ's decision without additional record development. The record before the ALJ shows that plaintiff failed to meet her burden of proving by medical evidence from the disputed period (i.e. physician's assessments, notes) that she could not fulfill the requirements of her past relevant work. In fact, the record shows that, while plaintiff did undergo treatment for her impairments during the disputed period, her conditions were either episodic or treatable with medication.[6] Further, this lack of affirmative evidence of a disabling impairment is compounded by plaintiff's failure to seek medical treatment for her other alleged disabling impairments for nearly a year during the disputed period.[7] Tr. at 145, 323. Finally, the record reveals that while plaintiff may have· eventually developed disabling impairments, Pl. Mem. at 21, the development of such impairments clearly postdates the disputed period.[8]

**6.** Plaintiff's bout with pneumonia in 1993, which culminated in sinusitis and pulmonary infection, was treated. Subsequent physician assessments of plaintiff's sinus and chest x-rays revealed normal sinuses and clear lungs, with minimal findings of pulmonary impairment despite plaintiff's repeated complaints of dyspnea (shortness of breath). Tr. at 134–136, 138, 140, 149, 153, 216–217, 219, 258, 274, 318, 320, 323, 343, 345, 390, 404–405, 428, 434, and 436. Notwithstanding the rash on and discoloration of plaintiff's face and back, an examining physician reported in 1996 that plaintiff's pulmonary manifestations of sarcoidosis had been well controlled since 1993. Tr. at 148, 390. Further, although plaintiff's problems with·arthralgia (pain in or affecting the joints) in her hands, wrists, knees, and ankles periodically returned throughout the disputed period, prescription steroids and medication eased plaintiff's discomfort by minimizing the swelling and warmth of her joints, as she herself reported to physicians on various medical visits. Tr. at 144–145, 147–148, 151, 183, 220, 258, 266, 317–318, 320, 322–323, 390, and 416. There was no evidence of "bony erosion" or mass destruction prior to the expiration of the disputed period. Tr. at 189, 196.

**7.** This is further compounded by plaintiff's repeated failure to keep appointments, to seek follow-up care upon doctor's indications to do so, and to take medication to ease her joint pain during both the summer months and the winter months, as physicians instructed. Tr. at 133, 138, 142, 147, and 322.

**8.** The bones in plaintiff's right shoulder swiftly deteriorated several months after her insured status ended, to the point where multiple shoulder replacement surgeries were required beginning in November of 1996. Tr. at 229–246. Although in January of 1995, plaintiff's physician indicated that she had a decreased range of motion in her thumbs, an elevated rheumatoid factor (an indicator of rheumatoid arthritis), and an increased erythrocyte sedimentation rate (the sedimentation rate, also known as "ESR," is a non-specific indicator of inflammatory, neoplastic and necrotic diseases, in which it is usually elevated), plaintiff missed her next two scheduled appointments and did not seek medical treatment for her arthralgia until December 19, 1995. Tr. at 145, 147, 201. In December of 1995, plaintiff's physician reported tenderness in her wrists and the mild swelling of her fingers, but also indicated that plaintiff did not suffer from effusion or tenderness in her knees. Tr. at 322–323. He also noted that plaintiff had a pattern of discontinuing her use of the medication prescribed for her arthralgia. Tr. at 322. In February of 1996, in light of plaintiff's complaints of continued pain in her hands and of developing pain in her right shoulder, blood tests again revealed an elevated rheumatoid factor. Tr. at 147. A treating physician, unsure as to whether plaintiff suffered from rheumatoid arthritis, requested follow-up X-rays in March of 1996, which substantially established that plaintiff did not suffer from any impairment of her upper extremities such that could be reasonably expected to severely limit her mobility immediately prior

Therefore, unlike in *Rosa*, the medical records are not merely sparsely collected notes from only a couple of the plaintiff's multiple visits to physicians. Rather, here, plaintiff's medical reports are complete and uncontradicted by similar reports during the disputed period.[9] Likewise, the ALJ correctly determined that "the evidence of record was adequate to reach a conclusion regarding [plaintiff's] disability and that no further evidence [was] required in this case." Tr. at 13. We find that the ALJ was thus not under any affirmative obligation to seek more information regarding plaintiff's alleged disability, as the evidence plaintiff introduced was complete and consistent with the ALJ's conclusion.

### 2. Treating Physician's Opinion

Peterson asserts that the ALJ erred in not according controlling weight to medical reports prepared by her treating physicians, Townsend and Plancher, who both concluded that plaintiff's arthritic condition prevented her from being able to sit for more than two hours. *See* Pl.'s Mem. at 19–20. Plaintiff bases this argument on the treating physician's rule, which provides that controlling weight is generally accorded to treating physicians, as long as the proffered medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Shaw*, 221 F.3d at 134. However, this obligation to give controlling weight to a treating physician's opinion, is inapplicable where the opinion is not "well-supported" by objective evidence. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993).[10] In this case, the opinions are not supported by the record evidence. Moreover, if the treating physician assessed the plaintiff's condition after the disputed period, and the opinion therefore does not provide a true retrospective diagnosis, it is not probative of the plaintiff's disability during the insured period. *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996). Therefore, the opinion of a physician who neither treated the plaintiff nor assessed the plaintiff's capacity to work

---

to the date she was last insured. Moreover, to determine that a patient is eligible for disability benefits arising from her bout with rheumatoid arthritis, 20 C.F.R. Part 220, Appendix 1, § 1.02(A) and (B) require the presence of a positive rheumatoid factor or an increased sedimentation rate, as well as "a history of persistent joint pain, swelling and tenderness involving multiple joints ... with signs of joint inflammation ... on current physical examination despite prescribed therapy for at least [three] months." 20 C.F.R. Pt. 220, App. 1, § 1.02(A). When such conditions result "in the significant restriction of function of the affected joints, and clinical activity [is] expected to last at least [twelve] months," the Code predicates a determination of disability. *Id.* Despite her elevated rheumatoid factor, Peterson fails to meet even the minimal requirements set forth in § 1.02(A), as she neglected to pursue the prescribed therapy by only sporadically taking her medication and failing to seek medical care for her arthralgia for nearly a year.

Furthermore, plaintiff only began exhibiting swelling and tenderness in multiple joints in February of 1996, at which time X-rays indicated that she did not suffer from a significant restriction of function of her affected joints.

9. Complete and often duplicated medical reports, contained within the ALJ's record, indicate that upon each admission to the emergency room and during appointments kept, the symptoms the plaintiff complained of were diagnosed, monitored at later medical examinations, and reevaluated. In short, detected conditions were either treated or resolved.

10. Similarly, because the plaintiff bears the burden of proving the fourth step in the ALJ's analysis, it is proper for the ALJ to rely on the absence of findings by a treating physician in concluding that plaintiff could return to her previous relevant employment. *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir.1995).

during the disputed period cannot be afforded exclusive controlling weight for determining the plaintiff's disability. *Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir.1991).

 We find that the treating physician's rule was not controlling in this case because the assessments by Townsend and Plancher were unclear, conclusory, and based on retrospective analysis. With respect to Townsend's first opinion, she did not form her opinion that plaintiff could not work due to chronic pain and respiratory symptoms until twenty one months after the disputed period. Tr. at 315. Townsend's second opinion, dated ten months after the first assessment, similarly describes plaintiff's condition only after the disputed period. With respect to Plancher's assessment of October 1998, although he found that plaintiff could not physically perform light work, he failed to provide support for this conclusion. Tr. at 380–81. Neither Plancher nor Townsend specified the precise time period when the plaintiff became disabled to the point where she could not work. Tr. at 315. Accordingly, the ALJ properly found that the opinions of Townsend and Plancher should not be afforded controlling weight.

### CONCLUSION

Because we find that the Commissioner's determination that plaintiff was not disabled during the disputed period is supported by substantial evidence on the record, the Commissioner's decision denying plaintiff SSDI benefits is hereby affirmed. Accordingly, defendant's motion for judgment on the pleadings is granted and plaintiff's motion is denied. The Clerk of the Court is respectfully directed to forthwith close this case.

**IT IS SO ORDERED.**