**Ida ODORIZZI, executrix of the Estate of Enrico Odorizzi, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

No. 92 CV 0804.

United States District Court, E.D. New York.

Oct. 21, 1993.

David Kuznicki, New York City, for plaintiff.

Mary Jo White, U.S. Atty. (Shari Leventhal, of counsel), Brooklyn, NY, and Office of Gen. Counsel, Dept. Health & Human Services (Annette H. Blum, Rhonda S. Greenberg, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Enrico Odorizzi (hereafter "plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of defendant Secretary of Health and Human Services (the Secretary) to discontinue plaintiff's disability benefits under the Social Security Act, 42 U.S.C. §§ 301 et seq. Both parties moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings. Plaintiff died on September 7, 1992, and his wife was substituted as plaintiff approximately one year later.

### I

██ The only significant issue is whether the opinion of plaintiff's treating physician that he was totally disabled has been refuted by substantial evidence.

The following facts are not disputed.

Plaintiff was a naturalized U.S. citizen who was born in Italy in 1933 and immigrated to the United States in 1954. He received a fifth grade education in Italy. At the time he applied for disability benefits he spoke English fairly well, could read to some extent, but could not write English at all. He worked as a carpenter for the same company for some twenty-five years, from 1956 until March 18, 1981. His job required him to carry or help to carry heavy objects, such as 200-pound beams, to be on his feet all day, to bend, and to climb as many as fifteen flights of stairs a day. While at work on March 18, 1981, plaintiff fell from a scaffold ten to fifteen feet above the ground and was knocked unconscious.

Plaintiff was hospitalized from March 18 until March 20, 1981, and diagnosed with a concussion, discoloration of his right eye socket, a nondisplaced interarticular fracture of his right wrist (for which he was given a short arm cast), and high blood pressure. He was hospitalized a second time, from April 6 until April 15, 1981, for a skull fracture and fracture of the right wrist. On April 19, 1981 plaintiff went to an emergency room complaining of severe recurrent low back pain. He was hospitalized for a third

time, and discharged on April 22, 1981 with a diagnosis of right renal colic.

Plaintiff was hospitalized a fourth time from May 1 until May 4, 1981, after complaining that he had been vomiting for three days. His fifth hospitalization was from July 17 until August 21, 1981, during which his spleen and a mass on his pancreas were removed. He was hospitalized for a sixth time from November 3 until November 19, 1981, this time for acute pancreatitis that had been triggered by increased alcohol intake.

Plaintiff applied to the Social Security Administration (the Administration) for Social Security disability benefits on April 12, 1982. The Administration denied his application initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge. After a hearing held on October 4, 1982 Administrative Law Judge Lawrence P. Ashley (the ALJ) awarded plaintiff a closed period of disability from March 18, 1981 through May 31, 1982.

The ALJ based his finding of disability on all of plaintiff's injuries and symptoms. His finding was not that plaintiff suffered from a single impairment that qualified as a total disability, *see* 20 C.F.R. § 404.1520(d), but rather that plaintiff's impairments combined with his age and vocational background rendered him unable to engage even in sedentary work during the period of disability. *See* 20 C.F.R. § 404.1545. Sedentary work requires an individual to lift no more than ten pounds at time, to spend most of the work day sitting, and to stand and walk long enough to carry out job duties. 20 C.F.R. § 404.1567(a).

The ALJ found plaintiff to be capable of performing light work as of June 1, 1982. Light work requires an individual to lift no more than twenty pounds at a time, to lift and carry ten-pound objects frequently, to be able to walk or stand for substantial periods, and to be able to push and pull leg and arm controls. 20 C.F.R. § 404.1567(b).

Plaintiff was again hospitalized from November 16 until December 2, 1982. He underwent lumbar traction after his condition, diagnosed and confirmed by EMG as a herniated disc at L4–L5, failed to improve with bed rest.

On December 27, 1982 plaintiff sought Appeals Council review of the ALJ's decision that he was no longer disabled after May 31, 1982. The Appeals Council denied review, and plaintiff brought an action for judicial review.

By Memorandum and Order dated September 21, 1984, then District Court Judge Joseph M. McLaughlin found that the ALJ's finding of no disability after May 31, 1982 was not supported by substantial evidence, and remanded the case with instructions to conduct a rehearing and to apply the medical improvement standard of *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930 (2d Cir.1984). Under *De Leon*, "the Secretary may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous." *Id.* at 936.

On October 6, 1987, three years after the remand, a second ALJ reheard plaintiff's claim. The record does not reveal the reason for the lengthy delay. The ALJ determined that the impairment afflicting plaintiff as of May 1982, the latest time the Administration considered plaintiff disabled, was a herniated disc. It was undisputed that plaintiff's other injuries, including his wrist and skull fractures and his damaged spleen and pancreas, had improved by May 31, 1982.

The ALJ's questions to plaintiff and the medical advisor Dr. Gilbert Young focused on whether plaintiff's back condition met or equalled a listed impairment. The listed impairment most relevant to plaintiff's condition is 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.05(C):

Other vertebrogenic disorders (e.g., herniated nucleus puplosus [sic], spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine, and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

At the hearing plaintiff testified that he wished he could work, that pain prevented him from doing so, that since his accident he had been unable to sleep at nights, and that he took sleeping pills prescribed by his doctor. His activities consisted of watching television, driving two blocks to a park, and driving two blocks to pick up his wife from a supermarket when she was done shopping. He was unable to go out for more than one hour without lying down due to pain.

Dr. Young neither examined nor treated plaintiff. His testimony was based on plaintiff's medical records. Dr. Young's function as non-examining medical advisor was "to explain complex medical problems in terms understandable to lay examiners." *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir.1990). Dr. Young testified that he found "a great discrepancy in the medical evidence." He noted that of five doctors who had "followed" plaintiff, only one, plaintiff's treating neurologist Dr. Morton Finkel, diagnosed plaintiff with lumbar herniated nucleus pulposus. Dr. Young also testified that Dr. Finkel's diagnosis was based solely on one EMG performed in 1982, and that Dr. Finkel's report relative to that EMG

> is very incomplete because it does not show the values that were obtained on that examination, if they were obtained, so this is a conclusion. And to conclude that a herniated disc is present, I can't agree with that. I would agree, based on these statements, that there was radiculopathy but not necessarily herniated disc.

At the conclusion of the hearing the ALJ stated he could not determine whether plaintiff's back condition met or equalled a listed impairment, so he held the record open in order for plaintiff to submit additional medical evidence. Following Dr. Young's advice, the ALJ requested plaintiff to undergo a CAT scan and an EMG, and an "impartial" orthopedic examination.

When plaintiff's counsel asked Dr. Finkel to approve the CAT scan, Dr. Finkel wrote back on October 18, 1987 to say that an "N.M.R. scan" would be of far more use because "it is much more accurate and gives better information." Plaintiff's counsel wrote to the ALJ on October 28, 1987, reminding him of the requested "consultative" exam, CAT scan, and EMG studies, and requesting the ALJ to make arrangements for an NMR instead of a CAT scan.

The record contains an Administration form entitled "Report of Contact" (the Report) dated November 30, 1987, which indicates that someone called plaintiff's counsel on November 3, 1987 from the ALJ's office. The caller, identified only by illegible initials, told counsel that the Administration would not pay for the NMR scan. The Report states that plaintiff's counsel said to "go ahead" with the "original plans." The Report further states that the ALJ later told his staff that he "wants a letter through [counsel] from Dr. Finkel, to perform CAT scan by the end of this week (11–6–87)."

According to the Report, counsel said he agreed to comply with the request. Counsel's account differs slightly. He says that he told the ALJ's office that Dr. Finkel had already said there was no point in performing a CAT scan.

The Report then recites that at the ALJ's instructions if the letter from counsel "is not received by stated date, state agency would be contacted to cancel original order" (presumably for an examination). Nothing in the record shows that this directive was conveyed to plaintiff's counsel.

Counsel wrote to the ALJ on February 11, 1988, saying he had heard nothing further about the consultative orthopedic exam, and inquiring as to the status of the matter.

The ALJ did not respond to the letter, and without further notice issued his decision dated February 25, 1988 finding that plaintiff's disability ceased May 31, 1982. In his opinion the ALJ stated that Dr. Finkel's "diagnosis of a herniated disc was never corroborated by any other physician on any other diagnostic test" and his report of nerve root damage was "not confirmed" by Dr. LaRosa. The ALJ also stated that he had requested a CAT scan and impartial examination from counsel to be obtained from Dr. Finkel.

Not having received any medical evidence from the plaintiff, the ALJ found that "[b]ecause of the claimant's apparent failure to cooperate, the undersigned must consider the conflicting evidence of record in a light unfavorable to the claimant," and made the finding of cessation of disability. On plaintiff's request for a review, the Appeals Council decided there was no basis for review.

## II

The Social Security Act provides that the Secretary may discontinue benefits if

(1) substantial evidence ... demonstrates that—

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity; or

.     .     .     .     .

(4) substantial evidence ... demonstrates that a prior determination was in error.

42 U.S.C. § 423(f). This court may overturn the Secretary's determination only when it is unsupported by substantial evidence. 42 U.S.C. § 405(g).

The reports of plaintiff's treating neurologist, Dr. Finkel, say that plaintiff suffered from a vertebrogenic disorder as described in the List of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.05(c). When a claimant's affliction meets one of the listed impairments, a finding of disability is warranted without regard to the claimant's age, education, or work experience. Such a finding obviates any need to determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(d)–(e).

Dr. Finkel's opinion, as that of the treating physician, is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Even if his opinion is not entitled to controlling weight, then the longer he treated plaintiff and the more contact he had with him regarding his back

condition the more weight his opinion would be granted. 20 C.F.R. § 404.1527(d)(2)(i) and (ii).

These regulations were not in effect when plaintiff had his hearing. At that time, the relevant standard provided that a treating physician's determination was "(i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians...." *Stieberger v. Bowen*, 801 F.2d 29, 31 (2d Cir.1986), (quoting *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986)). This court is in the awkward position of applying the new regulations retroactively to this appeal. In *Butts v. City of New York Dep't of Housing*, 990 F.2d 1397 (2d Cir.1993), the Second Circuit held that courts on appeal must apply new legal standards retroactively if the new law takes effect after decision but while appeal is pending, and recently the Second Circuit held that district courts are bound by the Secretary of Health and Human Services regulations regarding the treating physician rule. *Schisler v. Sullivan*, 3 F.3d 563, CCH Unemployment Ins.Rep. ¶ 17470A (2d Cir.1993).

## III

Dr. Finkel began seeing plaintiff in March 1982. His diagnosis of plaintiff was herniated nucleus pulposus. He prescribed bed rest and eventually traction, and although plaintiff experienced a decrease in pain after traction, his diagnosis, confirmed by EMG, remained the same. In a report dated December 1982 Dr. Finkel stated that plaintiff could not without pain sit for more than an hour, stand for more than half an hour, or walk for more than five minutes. He was also of the opinion that plaintiff was restricted to lifting less than ten pounds, and that he could not use his hands for pulling and pushing or use his feet for repetitive motions. Dr. Finkel concluded that plaintiff was totally disabled.

Dr. Finkel saw plaintiff twenty-four times between December 1982 and June 1987. In his report of June 28, 1987, Dr. Finkel stated that plaintiff's low back pain persisted and he

still had lumbar muscle spasm, pain on bending 40 degrees at the waist, pain on straight leg raising on the left at 45 degrees and on the right at 80 degrees, pain down the back of the left leg to the toes worsened by coughing, numbness in the left leg, and severe pain upon heel walking.

The doctor also reported 2.5 cm. of atrophy of the left lower extremity. The report listed the various painkillers and tranquilizers prescribed, and also stated that plaintiff's pain prevented him from sitting, standing, or walking for more than a few minutes at a time and lifting more than one pound.

The 1987 report concluded that "unfortunately this patient's medical condition has not improved since 1982, and in fact is likely to worsen as the patient ages," and that "[i]n no way do I think that the patient could currently return to substantial gainful activity."

The Secretary asserts that the opinions of five doctors—Resurreccion, LaRosa, Young, Matis, and Rosenblum—contradict Dr. Finkel, and that these opinions constitute substantial evidence in support of the Secretary's decision.

Dr. Resurreccion, Dr. Finkel's associate, saw plaintiff independently only once, in April 1982. He filled out a Workers' Compensation Board form on which he diagnosed plaintiff with 1–lumbar herniated disc and status post head trauma. On the form he checked a box marked "partial disability."

Dr. LaRosa, an internist, treated plaintiff for pancreas problems commencing in 1981. In a 1986 report Dr. LaRosa stated that there was no evidence of tenderness along plaintiff's thoracic (upper) spine and that an abdominal examination of plaintiff revealed no organomegaly or evidence of tenderness or masses. He said his examination of plaintiff's extremities was unremarkable. Dr. La-Rosa also stated: "I am not able to comment on Odrizzi's [sic] specific request for disability. There is nothing on physical examination which would fulfill criteria for disability in this patient, however, I am totally unable to comment on this person's functional capacity." Dr. LaRosa's 1987 report stated that plaintiff

is status post fall with a fracture of the pancreas and status post surgery of distal pancreatectomy. Patient was last seen on 12/2/86 for follow up on his hypertension with no specific complaints. However, the patient claims that serious low back pain prevents him from doing any work.

I have no other way to objectively assess Mr. Odorizzi's work capacity. However, it is my feeling that he is incapacitated from this back injury for his particular line of work.

No other significant abnormal radiographic or laboratory data are generated on Mr. Odorizzi and physical exam is essentially within normal limits.

Dr. LaRosa did not order any laboratory tests on plaintiff. He did not know or purport to know whether plaintiff had a herniated disc.

The findings of doctors Resurreccion and LaRosa—both treating physicians—do not contradict Dr. Finkel's findings.

Dr. Young, the Administration's medical advisor, testified that he could not reach a conclusion as to plaintiff's back condition without further tests because the one EMG that had been performed was five years old and because Dr. Finkel's interpretation of the EMG was conclusory. Dr. Young's testimony· does not directly contradict Dr. Finkel's finding. In any event the opinion of this non-examining medical advisor does not outweigh that of a treating physician. 20 C.F.R. § 404.1527(d)(2); *see also* 20 C.F.R. § 404.-1527(d)(1) (opinion of examining granted more weight than opinion of non-examining source).

Doctors Matis and Rosenblum are non-treating physicians who examined plaintiff prior to May 1982. They examined plaintiff at the request of the American International Adjustment Co., the workers' compensation insurance company responsible for paying plaintiff's workers' compensation disability benefits. At that time plaintiff and the insurance company were litigating the amount of workers' compensation benefits owed plaintiff.

Dr. Matis, an internist and cardiovascular specialist, diagnosed plaintiff with status post

laparotomy of a pseudocyst of the pancreas, chronic obstructive pulmonary disease, and hypertension. Dr. Matis stated that plaintiff did not need therapy for his on-the-job accident-related injuries, and that plaintiff was capable of doing simple, non-stressful jobs and could be gainfully employed. Dr. Rosenblum, a neurologist, stated that plaintiff had a minimal neurological disability, but that he could return to light duty immediately and full duty within a month.

■ Doctors Matis and Rosenblum do not provide substantial contradictory evidence. They prepared reports at the behest of a party with a vested interest in minimizing plaintiff's impairments. "[A] report submitted by a witness whose self-interest may well have dictated its contents cannot and should not be permitted to constitute substantial evidence." *Cullinane v. Secretary of Dep't of Health and Human Servs.*, 728 F.2d 137, 139 (2d Cir.1984) (citing *Echevarria v. Secretary of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982)).

The reports of treating neurologist Dr. Finkel were not inconsistent with other substantial evidence. The ALJ's determination that a CAT scan would be helpful was not a determination that Dr. Finkel's medical techniques were not medically acceptable, it was a determination that the ALJ did not wish to grant controlling weight to Dr. Finkel's opinion. But Dr. Finkel's opinion was entitled to controlling weight. Even if an ALJ applying the current regulations were to determine that Dr. Finkel's opinion did not warrant controlling weight, Dr. Finkel's long history of treating the plaintiff means his opinion is entitled to great weight. The other evidence does not outweigh Dr. Finkel's opinion. Certainly there is not substantial evidence to support the Secretary's determination that substantial evidence demonstrated an improvement in plaintiff's condition.

■ The ALJ's decision not to credit Dr. Finkel's opinion was based in part on plaintiff's "failure to cooperate." If a claimant fails to cooperate the Administration need not show medical improvement in the claimant's condition before terminating disability benefits. 20 C.F.R. § 404.1594(e)(2). The

exception does not apply when the claimant has good cause for failing to cooperate. *Id.*

It was reasonable for plaintiff to assume that the ALJ intended to designate a physician other than Dr. Finkel to perform the consultative exam and the CAT scan. During the hearing Dr. Young, the medical advisor, recommended an impartial exam. Dr. Young perceived discrepancies between Dr. Finkel's diagnosis and the reports of other physicians who had treated plaintiff. His use of the word "impartial" suggests that in his opinion, none of these doctors should conduct the exam.

The ALJ said nothing to contradict this inference. In fact, he reinforced it when he said to counsel:

I'm going to make a request that the Claimant be given a CAT scan and an EMG, and also an impartial orthopedic examination so that I can have this matter clarified. I'm going to ask that it be sent to the State Agency and then a decision will be made on that case. I will send it to the Medical Advisor for his opinion and then I will then proffer it to you so that you can then submit it to the Claimant's treating physician for his comment, and at that point I will then make a decision in this case.

Plaintiff could have understood the ALJ to mean that someone other than Dr. Finkel was to perform the CAT scan, EMG, and orthopedic exam; the State Agency would evaluate the results of the tests and exam; and that evaluation would be sent with the results to Dr. Finkel for his comments. Plaintiff could reasonably have thought it unlikely that the ALJ would both assign the examination and CAT scan to Dr. Finkel and require that the results, or the State Agency decision based on them, be sent to him for comment.

As stated above, plaintiff's counsel wrote to the ALJ before he issued his decision indicating that counsel was waiting for the judge to schedule the exam. The ALJ did not respond.

The record indicates that plaintiff's failure to cooperate was, at worst, the result of a misunderstanding of the ALJ's instructions

to have the CAT scan done. Those instructions were ambiguous at best. The Secretary was not excused from meeting the medical improvement standard before terminating plaintiff's benefits.

### IV

Plaintiff's motion for judgment on the pleadings is granted, and the case is remanded to the Secretary for calculation of benefits.

So ordered.