Rita SCHAAL, SS # 130–38–0513, Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**[1] **Defendant.**

No. 93–CV–1618.

United States District Court, N.D. New York.

June 10, 1996.

Memorandum Denying Motion to Vacate Oct. 25, 1996.

---

1. Pursuant to Public Law No. 103–296, the Social Security Independence and Program Improvement Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of that Act, the Commissioner of Social Security should be substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Fed.R.Civ.P. 25(d)(1).

Office of Irwin M. Portnoy, Irwin M. Portnoy, of counsel, Blauvelt, NY, for Plaintiff.

Thomas J. Maroney, United States Attorney for the Northern District of New York, William H. Pease, William F. Larkin, of counsel, Syracuse, NY, for Defendant.

## DECISION AND ORDER

McAVOY, Chief Judge.

This matter was referred to Magistrate Judge Gustave J. Di Bianco, for a Report–Recommendation and objections have been filed. Accordingly, pursuant to 28 U.S.C. § 636 and Local Rule 72.3(d), this Court has made a *de novo* examination of the record. This Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* Upon such a *de novo* review, this Court adopts the Report–Recommendation of the Magistrate Judge.

It is therefore, **ORDERED**, that the decision of the Commissioner of Social Security be **AFFIRMED** and the action be **DISMISSED**.

**IT IS SO ORDERED.**

## REPORT–RECOMMENDATION

DI BIANCO, United States Magistrate Judge.

This matter was referred to the undersigned for report and recommendation by Chief United States District Judge Thomas J. McAvoy, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). It has proceeded in accordance with General Order 43 of this court dated December 28, 1994 that sets forth the procedures to be followed in appeals from a denial of Social Security benefits. Both parties have filed briefs, but oral argument was not heard.

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") disability benefits, pursuant to Title XVI of the Social Security Act, on August 14, 1990. (Administrative Transcript ("T") at 97–100). The application was denied initially on October 2, 1990, (T. 111–14), and on reconsideration on November 16, 1990. (T. 126–28).

On November 28, 1990, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. 129–30). A hearing was held on December 21, 1990, before ALJ J. Lawson Brown, at which the plaintiff appeared *pro se.* (T. 62–80). In a decision dated February 8, 1991, the ALJ found that the plaintiff was not under a disability. (T. 168–73).

On March 13, 1991, the plaintiff requested review by the Appeals Council. (T. 174). In a decision dated November 19, 1991, the Appeals Council granted the plaintiff's request for review and remanded the matter for further proceedings. (T. 175–77).

Notice of the remand was mailed to the plaintiff, but was returned as unforwardable. (T. 186–189). The Office of Hearings and Appeals attempted to obtain plaintiff's cur-

rent address but was unsuccessful. (T. 183–185). The ALJ dismissed plaintiff's hearing request as abandoned on January 16, 1992, pursuant to 20 C.F.R. § 416.1457. (T. 190–192).

Plaintiff filed a request for review of the ALJ's dismissal on February 21, 1992. (T. 193). The Appeals Council granted plaintiff's request on September 18, 1992, and remanded the matter to the ALJ. (T. 195–97).

A second hearing was conducted on June 6, 1993, at which the plaintiff appeared with her attorney. (T. 81–96). The ALJ considered the case *de novo* and, on July 27, 1993, found that the plaintiff was not under a disability. (T. 40–49). The decision of the ALJ became the final decision of the Secretary (now Commissioner) when the Appeals Council denied plaintiff's requests for review on December 30, 1993.

## CONTENTIONS

The plaintiff makes the following claims:

1. The plaintiff was not afforded due process because: the ALJ was hostile to the plaintiff; the ALJ failed to fully develop the record; the Appeals Council failed to assign a different ALJ to the second hearing; and the ALJ considered the plaintiff's demeanor in making his decision. (Brief at 12–14).

2. The ALJ failed to apply the appropriate Social Security regulations and rulings. (Brief at 14–15).

3. The ALJ failed to call a vocational expert. (Brief at 15).

4. The court should remand the case for consideration of new and material evidence. (Brief at 15–18).

5. The court should award attorneys fees. (Brief at 18–19).

## FACTS

This Court adopts the facts contained in plaintiff's brief under the heading "The Facts" (Dkt. # 10 at 3–9), and supplemented in defendant's brief under the headings "Medical Evidence" and "Other Evidence" (Dkt. # 12 at 3–13), with any exceptions as noted.

## DISCUSSION

To be considered disabled, a plaintiff seeking SSI disability benefits must establish that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.... [T]he [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Bluvband v. Heckler,* 730 F.2d 886, 891 (2d Cir.1984).

■ The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

*1. Scope of Review:*

■ In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan,* 805 F.Supp. 147, 153 (S.D.N.Y.1992) (citing *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987)). A reviewing court may thus not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson,* 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984).

■ A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on Behalf of Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)(quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams,* 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972); *see also Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d. Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).

*2. Credibility:*

■ The plaintiff argues that she was denied due process because the ALJ demonstrated "hostility to the purpose of Title XVI" and that this hostility "permeated the proceedings," evidenced by the ALJ's finding that the plaintiff's motivation to work "appears to be questionable." [2] (T. 46; Pltf's Brief at 12). The plaintiff also argues that she was denied due process because the ALJ considered her demeanor in making his determination. (Pltf's Brief at 14). The ALJ stated that the plaintiff "did not appear to be in discomfort while sitting and there was no sign of breathing abnormalities." (T. 46). Based upon these findings, the ALJ determined that "the claimant's hearing testimony about her symptoms and limitations [was] exaggerated." (T. 46).

■ The determination of a claimant's credibility is the province of the ALJ as long as that finding is supported by the record. *Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir.1983); *see Coats v. Bowen,* 676 F.Supp. 939, 944 (W.D.Mo.1987); *Jantz v. Heckler,* 616 F.Supp. 584 (S.D.N.Y.1985). Indicia of credibility such as a claimant's demeanor may properly be considered by the ALJ in assessing a claimant's credibility. *Marcus v. Califano,* 615 F.2d ·23, 27 (2d Cir.1979); *see*

---

**2.** The ALJ observed that the plaintiff's only past employment had been as a seamstress for a dress shop for about six months in 1984, that the job was not steady, and that the plaintiff apparently never returned to work after she was married. (T. 46). The ALJ also referred to his prior deci-

sion, where he had found that the plaintiff's five month old child was as much a factor in her lack of employment as her alleged impairments, based upon his observation that her application for aid to dependent children required her to apply for SSI benefits. (T. 172).

*also Fishburn v. Sullivan,* 802 F.Supp. 1018, 1028 (S.D.N.Y.1992). A claimant's work history and motivation to work are also indicia of credibility. *See Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability"); *Van Nguyen v. Shalala,* 1994 WL 362263, *4 (N.D.Cal.1994) (plaintiff's receipt of AFDC benefits and income represented an " 'obvious disincentive' to work" and "tend[ed] to establish a motive for exaggerating claims [of] inactivity unrelated to physical disability").[3]

The ALJ's consideration of the plaintiff's demeanor and work history was not improper. Therefore, the plaintiff's claim that her due process rights were violated by the ALJ's conduct is without merit.

*3. Development of the Record:*

 ▆ The plaintiff claims that she was denied due process because the ALJ failed to properly investigate the plaintiff's mental illness.[4] (Pltf's Brief at 13).

 ▆ An ALJ is obligated to help the parties develop a full and fair record, even if the claimant is represented by counsel. *Fishburn v. Sullivan,* 802 F.Supp. 1018, 1025–26 (S.D.N.Y.1992) (citations omitted). An ALJ should make *"every reasonable effort"* to obtain treating source evidence, and if the treating source provides an incomplete report, the ALJ must *"request the necessary additional information from the treating source." Id.* at 1025 (quoting *Schisler v. Bowen,* 851 F.2d 43, 46–47 (2d Cir.1988)).

In *Fishburn,* the claimant failed to present *any* medical evidence from her treating physician, even though it was clear from her hearing testimony that such records existed.

*Fishburn,* 802 F.Supp. at 1025. The ALJ held the record open for ten days so that the claimant's attorney could submit the missing medical records. Plaintiff's attorney failed to submit the records, and the ALJ rendered a decision based on the evidence before him. On appeal, the district court held that the ALJ had erred in not obtaining the missing records, which were "critical to a proper determination of [the] plaintiff's claim," and that counsel's failure to submit the records did not excuse the ALJ from his duty to obtain them. *Id.*

The instant case is distinguishable from *Fishburn.* At the second hearing, the ALJ heard testimony regarding the difficulties plaintiff had with reading, spelling and mathematics while she was in school. (T. 85–86). Plaintiff stated that, in spite of these difficulties, she received a "normal" diploma, not a "special" diploma. (T. 66–67). Plaintiff did allege that she continues to have difficulty spelling, doing math problems, and writing, the latter because she "just can't keep things in my mind sometimes." (T. 86). The plaintiff argues that this should have caused the ALJ to investigate whether or not the plaintiff suffered from a mental illness. (Pltf's Brief at 13). This testimony, however, would hardly have signalled the ALJ that the plaintiff had a mental impairment. In addition, records submitted from one of the plaintiff's treating physicians, which indicated that she experienced some anxiety, also indicated that the anxiety was "stable" and controlled by Diazepam. (T. 213, 217–19).

There is no indication that medical records were missing which would have been "critical to a proper determination of plaintiff's claim." Thus, the ALJ was under no duty to develop the record further.

**3.** But see *Peters v. Shalala,* 1993 WL 489234, (S.D.Iowa), where an ALJ discounted a claimant's credibility because she lacked the need or motivation to work. The ALJ had noted that the claimant made more money through pension and disability benefits than she had ever earned in her prior work. The District Court held,

It is not clear how the person's level of motivation to work makes them more or less credible when evaluating complaints of pain. It could just as easily be said that if a person has no income they are not credible because they need

the social security disability payments. Accordingly, this reason for discrediting plaintiff's testimony is unacceptable.
*Id.* at *4.

**4.** The plaintiff also complains generally of the ALJ's failure to develop the record at the first hearing, where the plaintiff was not represented by counsel. The Appeals Council already addressed this complaint and remanded the matter to the ALJ for further development of the record. (T. 175–77).

### 4. Assignment of Different ALJ:

■ Plaintiff claims she was denied due process because the Appeals Council did not assign a different ALJ to the second hearing.

A claimant who objects to the ALJ who is to conduct her hearing is directed to notify the ALJ at her earliest opportunity. 20 C.F.R. § 416.1440. If, after considering the claimant's objections, the ALJ does not withdraw, the claimant may, after the hearing, present her objections to the Appeals Council and request that the hearing be revised or a new hearing held before another ALJ. § 416.1440.

The plaintiff did not follow this procedure, but appeared with her attorney at the second hearing before the same ALJ. Therefore, plaintiff is deemed to have waived this objection. *See United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 35–37, 73 S.Ct. 67, 68–69, 97 L.Ed. 54 (1952).

### 5. Pain and Residual Functional Capacity:

■ The plaintiff claims that the ALJ did not properly apply Social Security Ruling ("SSR") 88–13 in evaluating her testimony concerning the extent of her pain and other symptoms. 20 C.F.R. § 416.929 essentially codified SSR 88–13 for claimants seeking SSI disability benefits.

This court recognizes that subjective pain may serve as the basis for establishing disability, as long as there are "medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) [sic] which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). *see also Gallagher on Behalf of Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir.1983). If a claimant has a medically determinable severe impairment, but the impairment does not meet or equal a listed impairment, the ALJ must consider the impact of the claimant's impairment and any related symptoms, including pain, on the claimant's residual functional capacity. 20 C.F.R. § 416.929(d)(4).

In the present case, the ALJ found that the plaintiff's medical records showed she had varicose veins, chronic obstructive pulmonary disease related to cigarette smoking, and was "significantly overweight." (T. 43). The ALJ considered the plaintiff's impairments to be "severe" as defined by 20 C.F.R. § 416.921, but found that the plaintiff's impairments did not meet or equal any listed impairment. (T. 43). The ALJ properly proceeded to review the medical evidence and consider the impact of the plaintiff's impairments on her residual functional capacity. As noted above, the ALJ found the plaintiff's testimony of her symptoms and limitations to be exaggerated. Nonetheless, the ALJ gave the plaintiff "the benefit of doubt" and concluded that she should be restricted to sedentary work. (T. 46).

Apparently at the heart of the plaintiff's claim is her assertion that, when he found that the medical signs and laboratory findings did not substantiate a physical impairment capable of producing the alleged pain, the ALJ should have investigated the possibility of a mental impairment. (Pltf's Brief, App. A, ¶ 3). However, 20 C.F.R. § 416.929(b) directs the development of evidence regarding the possibility of a medically determinable mental impairment only "when [the ALJ has] information to suggest that such an impairment exists." As noted above, the ALJ had no such information before him. Therefore, the plaintiff's claim is without merit.

### 6. Treating Physician:

■ The plaintiff argues that the ALJ failed to evaluate the medical evidence from her treating physicians in accordance with 20 C.F.R. § 416.927. (Pltf's Brief at 14–15, App. A). The plaintiff apparently objects to the ALJ's rejection of a questionnaire completed by G. Mark Jobson, M.D., the plaintiff's most recent treating physician.[5] Dr. Jobson diagnosed asthma and symptomatic varicose veins in the plaintiff's right leg. His answers to the questionnaire indicated, among other things, that the plaintiff was disabled, would have trouble working continuously six hours per day without breaks, would need to alter-

---

**5.** The plaintiff complains that the ALJ failed to give any weight to the opinion of Dr. Shafer.

(Pltf's Brief, App. A). However, there is no reference to a Dr. Shafer anywhere in the record.

nate standing and sitting to complete an eight-hour work day, and that her symptoms would result in frequent absences from work. (T. 239–41).

Prior to 1991, the Second Circuit's "treating physician rule" directed that the opinions of treating physicians were "binding on the fact-finder unless contradicted by substantial evidence." *Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988). In 1991, the Social Security Administration promulgated new regulations which change the way that the agency and the courts review the opinion of a treating physician. *See* 20 C.F.R. § 416.927(d). The Second Circuit has held that the new regulations are valid and supplant the treating physician rule used by the Second Circuit prior to the new regulations. *Schisler v. Sullivan,* 3 F.3d 563 (2d Cir.1993).

In the present case, the ALJ set forth the old treating physician rule and cited *Schisler v. Bowen.* (T. 45). Further, in rejecting the questionnaire completed by Dr. Jobson, the ALJ stated that it was "not a statement of the treating physician that is binding on me." (T. 46). Nonetheless, the ALJ provided sufficient information in his decision which allows this court to determine whether he accorded Dr. Jobson's opinions the proper weight. *See Sharieff v. Shalala,* 877 F.Supp. 104, 108 (E.D.N.Y.1995).

■ A treating physician's expert opinion as to the existence of a disability includes both the diagnosis, and the nature and degree of disability. *Brandon v. Bowen,* 666 F.Supp. 604, 606 (S.D.N.Y.1987) (quoting *Hidalgo v. Bowen,* 822 F.2d 294, 296–97 (2d Cir.1987)) (citation omitted). The opinion of a treating physician is entitled to controlling weight if " 'it is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.' " *Odorizzi v. Sullivan,* 841 F.Supp. 72, 76 (E.D.N.Y. 1993) (quoting 20 C.F.R. § 404.1527(d)(2), which is identical to 20 C.F.R. § 416.927(d)(2)). If the treating physician's opinion is not given "controlling weight," its weight will depend upon the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. § 416.927(d)(2–6); *see Odorizzi,* 841 F.Supp. at 76.

Here, the ALJ rejected Dr. Jobson's questionnaire, thus giving his opinion no controlling weight, based on the "lack of clinical findings to support [the doctor's] conclusions." (T. 47). The only other submission from Dr. Jobson, submitted to the Appeals Council on review of the ALJ's decision, is a cryptic handwritten note which reads as follows:

> This is to state that in my opinion, based upon current exam and my review of previous medical records, Rita Schaal is totally disabled and has been disabled for the past 3 years, since 1990.

(T. 9). Dr. Jobson's opinion was based upon the hospital records which the ALJ had already considered. (T. 7).

In his decision, the ALJ discussed the length of Dr. Jobson's treatment relationship with the plaintiff and the frequency of examination. The ALJ noted that the plaintiff had been under the care of Dr. Jobson, a family physician, since October 29, 1992. (T. 44). The ALJ further pointed out the lack of evidence in the record regarding the frequency of follow up visits to Dr. Jobson. (T. 47).[6]

The ALJ expressed criticism of the questionnaire itself. Although the origin of the questionnaire is unclear, the ALJ surmised that it was probably sent to Dr. Jobson by the plaintiff's attorney. (T. 46). The ALJ expressed his view that the form was designed to elicit positive responses to questions relating to the basis for the diagnosis and symptoms. (T. 46). Review of the form reveals that it consists of a series of questions, most of which are to be answered either "yes" or "no." At the top of the form

---

6. This court notes that the record is also devoid of any reference to what condition Dr. Jobson was treating the plaintiff for.

is the statement: "This form is is [sic] designed to provide important statutory information with a minimal time commitment on your part." (T. 239). The final question asks for the "approximate date from which claimant has continuously been unable to work." [7] (T. 241).

Based upon the above findings, the ALJ properly rejected Dr. Jobson's opinion that the plaintiff is disabled. Although the ALJ set forth the inappropriate legal standard in evaluating Dr. Jobson's opinion, it would serve no purpose for the court to remand the matter to the Commissioner. The ALJ provided sufficient information as to the basis of his decision to allow the court to determine that he accorded Dr. Jobson's opinion the weight to which it was properly entitled. It is clear that the outcome would have been the same if the appropriate law had been applied.

### 7. Physical Impairments:

▮ The plaintiff claims the ALJ did not properly apply SSRs 83–10, 83–11, and 83–12 to evaluate the plaintiff's physical impairments.[8] (Pltf's Brief at 15, App. A). These rulings supply the guidelines for determining a claimant's capability to do work other than his or her past relevant work.

The plaintiff apparently contends that she does not meet the requirements for sedentary work: sitting for six hours a day, standing and walking for two hours a day, occasionally lifting 10 pounds, and frequently lifting five pounds. According to the plaintiff, "[a]n individual unable to do this cannot be said to be able to perform a full range of sedentary work on a sustained basis." (Pltf's Brief, App. A, ¶ 4).

There is no evidence in the record supporting the plaintiff's claim that she cannot meet the requirements for sedentary work. The ALJ did note the plaintiff's need to avoid extremes of temperature and severe atmospheric pollutants caused by her asthmatic condition, but determined that it would not significantly interfere with her ability to per-

form sedentary work. (T. 47, 48). This part of the plaintiff's claim is therefore without merit.

### 8. Mental Impairments:

▮ The plaintiff claims the ALJ did not properly apply SSR 85–15 to evaluate the plaintiff's mental capacity. (Pltf's Brief at 15, App. A). SSR 85–15 provides guidelines for using the medical vocational rules (20 C.F.R. Pt. 404, Subpt. P, App. 2) as a framework for evaluating solely nonexertional impairments. SSR 85–15 is applicable only when the claimant has "no medically determinable impairment which limits exertion." (SSR 85–15, April 1985 Rulings pamphlet at 31, 32). Here, the ALJ considered the plaintiff's history of varicose veins and surgical procedures undertaken to correct the problem, and concluded that she was restricted to sedentary work. (T. 46). Thus the plaintiff was determined to have a medically determinable impairment which limited exertion and SSR 85–15 is not applicable.

### 9. Vocational Expert:

The plaintiff claims that the ALJ should have called a vocational expert to testify as to the plaintiff's alternative vocational capacities. The plaintiff puts forth two arguments in support of this claim.

#### a. Mental Illness

▮ Plaintiff argues that, where a claimant is subject to a significant nonexertional impairment the Commissioner must elicit vocational testimony. (Pltf's Brief at 15). Plaintiff cites *Bapp v. Bowen*, 802 F.2d 601 (2d Cir.1986), which held that

... where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the application of the [medical vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2] is inappropriate. By the use of 'significantly diminish' we mean the additional loss of work capacity beyond a negli-

---

7. To which Dr. Jobson replied, "Unknown (patient has only been seen by this office since 10/29/92)." (T. 241).

8. The plaintiff also mentions SSR 83–14 once, but makes no argument as to its application in this case. (Pltf's Brief, App. A, ¶ 4).

gible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.

803 F.2d at 605–06. In such a situation, the ALJ is directed to introduce evidence that jobs exist in the economy which the claimant can obtain and perform. *Id.* at 603.

Plaintiff contends that she has a mental illness which qualifies as a significant nonexertional impairment requiring introduction of vocational evidence. However, there was nothing in the record to suggest that the plaintiff had a mental illness. The only nonexertional impairment found by the ALJ was the plaintiff's asthmatic condition (which she referred to as "allergies"), but the ALJ determined that this would not significantly interfere with her ability to perform sedentary work. (T. 47, 48).

### b. Alternate Sitting and Standing

▮ The plaintiff's second argument is apparently based upon SSR 83–12, which gives guidelines for·using the medical vocational rules as a framework for evaluating exertional limitations. The plaintiff directs the court's attention to the section on "special situations" which addresses the situation where a person is found to be capable of either sedentary or light work, but must alternate periods of sitting and standing. The ruling directs that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert]·should be consulted.... " (Social Security Rulings, Cumulative Edition 1983 at 191).

Here, the ALJ did not find that the plaintiff would need to alternate sitting in standing to perform sedentary work.[9] Therefore, he was not required to introduce evidence from a vocational expert.

### 10. New Evidence:

Sentence six of 42 U.S.C. § 405(g) states that a court may order the Secretary to consider additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the

failure to incorporate such evidence into the record in a prior proceeding.... " The Second Circuit has summarized the requirements of section 405(g) as follows:

[A]n appellant must show that the proffered evidence is (1) " 'new' and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984), and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative, *see Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. *See Szubak,* 745 F.2d at 833; *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). Finally, claimant must show (3) good cause for her failure to present the evidence earlier. *See Tolany v. Heckler,* 756 F.2d 268, 272 (2d Cir.1985)(good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period).

*Lisa v. Secretary of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir.1991) (quoting *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988)); 42 U.S.C. § 1382c(a).

In the instant case, plaintiff has submitted three pieces of new evidence and requests that the court remand this matter to the Commissioner for consideration of that evidence. Plaintiff submitted a report from Wilson E. Headers, Ph.D., the plaintiff's treating psychologist, an X-ray report, and a CT scan report.

The form from Dr. Headers, completed January 1, 1994, indicates that the plaintiff has been under his care since August 31, 1993. Pltf's Brief, Ex. 1. Dr. Headers diagnoses "phobic reaction," panic disorder with agoraphobia, dysthymia, and post traumatic stress disorder. He characterizes the plaintiff's phobia as "intense" and asserts that it "makes work impossible." He also states that her impairment has lasted more than a

---

9. The only evidence that even suggested that she might need to alternate sitting and standing was

the questionnaire submitted by Dr. Jobson. (T. 240).

year. Attached to the form are four reports dated October 1993, December 1993, February 1994, and April 1994, which summarize the plaintiff's condition.

The X-ray report, completed January 10, 1994 by Noyel DeSouza, M.D., indicates the presence of osteophyte formations suggesting osteoarthrosis of the lumbosacral spine, as well as findings suggestive of discogenic disease.[10] The CT scan report, completed January 11, 1994 by Gi S. Song, M.D., indicates mild degenerative changes in the plaintiff's lumbosacral spine.

### a. Dr. Meaders' Reports:

 An application for SSI benefits remains effective until the hearing decision is issued. If the claimant first meets all the requirements for eligibility after that date, a new application for benefits must be filed. 20 C.F.R. § 416.330. In the present case, the ALJ's hearing decision was issued July 27, 1993.

Except for Dr. Meaders' notation on the form that the plaintiff's condition had lasted more than a year, Dr. Meaders reports do not discuss the plaintiff's condition during the relevant time period. (Deft's Brief at 24). Further, the reports reveal a steady improvement in the plaintiff's condition, and would thus not reasonably have resulted in a different decision. Thus the court finds that this evidence is not "material" within the meaning of § 405(g). Further, the plaintiff commenced treatment with Dr. Meaders several months prior to the Appeals Council's November 1993 denial of review. The plaintiff has not shown cause for her failure to present this evidence at that time.

### b. X-ray and CT Scan Reports:

 The X-ray and CT scan were administered in January 1994 and give no indication that the plaintiff might have suffered from these conditions during the relevant period. Thus the court finds that this evidence is not "material" within the meaning of § 405(g).

10. Osteoarthrosis is a chronic, noninflammatory bone disease. Discogenic disease is caused by

### 11. Attorneys Fees:

The plaintiff seeks attorneys fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(b), which requires that the plaintiff be a prevailing party. The plaintiff is not a prevailing party. Therefore, attorneys fees should be denied.

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and the complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a), 6(a), 6(e).

October 17, 1995.

### MEMORANDUM, DECISION & ORDER ON MOTION

McAVOY, Chief Judge.

On December 30, 1993, plaintiff filed this action pursuant to section 205 of the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), to review a final determination of the Commissioner of Social Security ("the Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under the Act. The matter was referred to the Hon. Gustave J. Di Bianco, United States Magistrate Judge, for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Magistrate Judge Di Bianco's report and recommendation, dated October 17, 1995, recommended that the Commissioner's decision to deny plaintiff's August 14, 1990 application for SSI be affirmed and the Complaint dismissed. By Order dated June 8, 1996,

disarrangement of an intervertebral disk. Dorland's Medical Dictionary (Shorter Ed., 1980).

this Court adopted the report and recommendation. Judgment was entered on June 11, 1996.

Plaintiff now moves, pursuant to Fed. R.Civ.P. 60(b) and 42 U.S.C. §§ 405(g) and 1383(c)(3), to vacate or modify the judgment of this Court, for judgment on the pleadings in favor of plaintiff, or in the alternative to remand this matter to the Commissioner for consideration of new and material evidence.

## I. Discussion

### A. Standard for Motion to Vacate

Federal Rule of Civil Procedure 60(b) provides, in pertinent part, that

> the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ... or (6) any other reason justifying relief from operation of the judgment.

It is well established that a motion to vacate a judgment under Rule 60(b) is addressed to the sound discretion of the trial court. *National Petrochemical Company of Iran v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir. 1991) (citing *Weissmann v. Freeman,* 868 F.2d 1313, 1326 (2d Cir.), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989)). The Second Circuit has explained that Rule 60(b) should be broadly construed to do substantial justice, but that final Judgments should not lightly be overturn. *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir. 1986).

With respect to judicial review of the Commissioner's denial of SSI, the SSA provides, in pertinent part, that "the court may ... at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...". 42 U.S.C § 405(g) (1991 and Supp. 1996).

It is with these considerations in mind that the Court turns to plaintiffs motion.

### B. Report of Dr. Wilson Meaders

Plaintiff first argues that the Court should vacate the June 1996 judgment on the basis of a report of Dr. Wilson Meaders ("Meaders Report"), dated October 1993 through April of 1994. The Court is perplexed as to how the plaintiff could construe this evidence as being "newly discovered" under Fed.R.Civ.P. 60(b), or "new" under 42 U.S.C. § 405(g), since this report was submitted to and addressed by Magistrate Judge Di Bianco in his report and recommendation. *See Schaal v. Commissioner of Social Security,* No. 93–CV–1618 at 22 (N.D.N.Y. Oct. 17, 1995) (Di Bianco, Mag. J.). The Court refers plaintiff to Judge Di Bianco's ruling on this evidence therein. Plaintiff is also reminded that the Court adopted the report and recommendation, notwithstanding plaintiff's further reliance on this evidence in her objections thereto. (*See* Pl. Exceptions and Memorandum at 2–3, filed October 27, 1995). This evidence has thus been reviewed twice before. The Court will not allow plaintiff to relitigate matters already decided in the original judgment. *Donovan v. Sovereign Security Ltd.,* 726 F.2d 55, 60 (2d Cir. 1984).

### C. The Schleuderer Report and Plaintiff's Second Application for SSI

Plaintiff's motion in part seems based upon the fact that her second application for SSI, dated August 23, 1995, was granted on February 15, 1996. Plaintiff asserts that the very same evidence she submitted on her motion for judgment on the pleadings (addressed by Judge Di Bianco's report and recommendation) was submitted to the Commissioner when she filed her second application. Plaintiff further asserts that the January 23, 1996 report of Dr. Claude Schleuderer (the "Schleuderer Report"), confirms that plaintiff "suffered from a serious psychiatric illness which justified the allowance of her application." (Pl. Mem. at 4). The Court notes two fatal flaws in plaintiff's reliance on this evidence for the present motion.

First, newly discovered evidence forming the basis of a Rule 60(b)(2) motion must not have been discoverable, with due

diligence, in time to move for a new trial under Rule 59(b). "Rule 60(b)(2) clearly applies to Social Security disability reviews, despite the absence of a trial by a District Court." *Harden v. Secretary of Health and Human Services,* 1988 WL 26098 at *1 (E.D.N.Y.) (citing *Mumford v. Bowen,* 814 F.2d 328, 329–30 (7th Cir.1986)). Rule 59(b) requires that a motion for a new trial be filed within 10 days after entry of the judgment. Fed.R.Civ.P. 59(b). Judgment was entered on June 11, 1996. Plaintiff first presented this evidence to the Court On July 23, 1996, in support of the present motion. Plaintiff offers no reason why this evidence was not discoverable within the proper time frame under Rules 59 or 60.

█ Second, 42 U.S.C. § 405(g) provides that new evidence must be "material." Plaintiff claims that this evidence is material because it "caused defendant to grant [plaintiff's] second application." (Pl. Mem. at 5). This formalistic assertion confuses the proper subject matter with respect to which such evidence must be material. Material evidence must be "both *relevant to the claimant's condition during the time period for which benefits were denied* and probative." *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988) (emphasis added) (citing *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir. 1975)). The time period for which benefits were denied ended July 27, 1993, when the ALJ rendered his final decision including that plaintiff was not disabled. Plaintiff's second application for SSI, which was granted, determined that plaintiff's period of disability began on October 10, 1993. (*See* Pl. Attorney Aff., Ex. C: Disability Determination and Transmittal, Feb. 15, 1996). Thus, whatever findings the Commissioner made with respect to plaintiff's second application were for an entirely different period than that currently in dispute.

Moreover, the Schleuderer Report made no findings relevant to the period for which benefits were denied. Under the heading "Longitudinal Psychiatric History," there is mention of a history of abuse, but this reference goes only so far as to state what plaintiff herself indicated to Schleuderer at the time of the interview. Nothing in the report suggests any evidence of disability during the period prior to July of 1993. Thus, neither the Schleuderer report nor the Commissioner's grant of SSI benefits to plaintiff based upon her second application are "material" within the meaning of 42 U.S.C. § 405(g).

### D. The ALJ's Alleged Bias and Failure to Develop the Record

Finally, plaintiff argues that the ALJ failed to develop a full record, and that his decision denying plaintiff benefits exhibited bias toward Title XVI claimants. After reviewing the plaintiff's arguments, the Court finds that plaintiff offers no new evidence which would require the Court to vacate its prior judgment. Furthermore, the Court once again refers the plaintiff to Magistrate Judge Di Bianco's report and recommendation, in which these arguments were *specifically addressed and rejected. See Schaal v. Commissioner of Social Security,* No. 93–CV–1618 at 7, 9 (N.D.N.Y., Oct. 17, 1995) (Di Bianco, Mag. J.). Plaintiff goes so far as to premise her argument that the ALJ failed to develop the record on the very same case which the Magistrate Judge expressly found distinguishable in rejecting that argument the first time. *See id.* at 9 (citing *Fishburn v. Sullivan,* 802 F.Supp. 1018 (S.D.N.Y. 1992)).

## II. Conclusion

Because plaintiff has not presented sufficient grounds for relief under either Rule 60(b) or 42 U.S.C. § 405(g), her motion to vacate or modify the judgment, or in the alternative for remand, is hereby denied.

**IT IS SO ORDERED.**